IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIC M. BETTS** and **SUSAN BETTS,** )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>**NEW CASTLE YOUTH DEVELOPMENT** )<br>**CENTER, KENNETH WENT,** in his individual )<br>and official capacity, **CHARLES MITCHAM,** )<br>in his individual and official capacity, **DAVID** )<br>**TOMOCHECK,** in his individual and official )<br>capacity, **OMAR STUART,** in his individual )<br>and official capacity, **WILLIA BLUE,** in his )<br>individual and official capacity, **TAMMY A.** )<br>**ODEM,** in her individual and official capacity, and )<br>**JOHN DOE,** in his individual and official )<br>capacity, )<br>)<br>Defendants. ) | 2:07cv337<br>**Electronic Filing** |

**MEMORANDUM OPINION**

September 8, 2009

**I.    INTRODUCTION**

Plaintiffs, Eric M. Betts ("Eric") and his mother Susan Betts ("Mrs. Betts")(collectively "Plaintiffs"), filed the instant action pursuant to 42 U.S.C. § 1983, alleging violations of their rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States by Defendants, the New Castle Youth Development Center (the "YDC"), Kenneth Went ("Went"), Charles Mitcham ("Mitcham"), David Tomocheck ("Tomocheck"), Omar Stewart ("Stewart"), Willia Blue ("Blue"), and Tammy A. Odem ("Odem")(collectively "Defendants"). The Defendants have filed a motion for summary judgment, the Plaintiffs have responded and the matter is now before the Court.

**II.    STATEMENT OF THE CASE**

The YDC at New Castle, Pennsylvania is one of several facilities in the Pennsylvania Department of Welfare's Bureau of Juvenile Justice Services (the "BJJS") which is conducted

for youths who have been adjudicated delinquent and committed to the care and custody of the BJJS by Pennsylvania Juvenile Courts.  Defendants' Concise Statement of Undisputed Material Facts (hereinafter "Def. CSUMF") ¶ 1.  Pursuant to an Order by the Court of Common Pleas of Allegheny County, Pennsylvania, Eric was committed to the YDC's Secure Treatment Program in February of 2006.  Def. CSUMF ¶ 2.  The Secure Treatment Program is a maximum security program for males adjudicated delinquent for serious offenses.  Def. CSUMF ¶ 3. The Secure Treatment Program has eleven (11) youth development aides ("YDAs"), three (3) counselors, a counselor supervisor, two (2) managers and a director. Plaintiffs' Statement of Material Facts (hereinafter "Pl. SMF") ¶ 2. During Eric's confinement, Mitcham was the Director of the Secure Treatment Program. *Id.*

At the YDC at New Castle, there are five (5) cottages within the Secure Treatment Program with approximately fifteen (15) or sixteen (16) residents per cottage. Def. CSUMF ¶ 4. The counselors and YDAs worked in the residential cottages, and were required to accompany the residents at all times.  Pl. SMF ¶ 2; Def. CSUMF ¶ 7.  Eric was assigned to cottage 2B and defendant Stewart was his counselor.  Def. CSUMF ¶ 5.  On weekends, Eric and the other residents had "free time" after they were finished with morning chores, and they were free to decide what they wanted to do with their time - watch television, participate sports activities, etc. - but YDC staff had to be present.  Def. CSUMF ¶¶ 8 & 9.  The residents had access to indoor and outdoor basketball courts, several gyms, weight training equipment, a swimming pool and a fairly large grass field between cottages 2A and 2B (the "Field") for football or other activities. Def. CSUMF ¶ 10.  The Field was visible from inside cottages 2A and 2B, and could be partially seen from Director Mitcham's office. Pl. SMF ¶ 3; Def. Response to Pl. SMF (Def. Resp.") ¶ 3.

On Saturday, April 29, 2006, the residents of 2B asked the staff to allow them to play football in the Field behind the cottages.  Def. CSUMF ¶ 18.  The staff agreed, and at about 9:15 a.m., ten (10 ) residents including Eric went out to the Field. Def. CSUMF ¶ 20.  Because the YDC requires a ratio of one (1) staff member to six (6) residents, two (2) staff members, Blue

and Odem, went outside with the boys playing football, and one (1) staff member, Stewart, remained inside the cottage with the five (5) or six (6) residents who were not playing. Def. CSUMF ¶¶ 22, 23 & 24. The football game was organized such that one team was made up of residents from Philadelphia and the other team consisted of residents from Pittsburgh. Deposition of Rajhib Hankerson ("Hankerson Dep.") p. 14; Deposition of Diante Wilson ("Wilson Dep.") pp. 11-12. As was normally the case when the residents played football, it was a game of tackle football. Hankerson Dep. pp. 11-16; Wilson Dep. pp. 10-12.

During the game, Eric ran down field during a kick-off[1], collided with another resident who had picked up the ball, fell to the ground and was unable to get up. Pl. SMF ¶¶ 10 & 11. Eric was transferred by ambulance to a local hospital where a medical helicopter was waiting to take him to St. Elizabeth's Hospital in Youngstown, Ohio. Def. CSUMF ¶ 44. Eric suffered spinal cord injuries resulting in quadriplegia. Complaint ¶ 25.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d

---

[1] The football was not kicked, however, the ball was thrown to simulate a kick-off.

177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56©, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV.   DISCUSSION

    A.   Eleventh Amendment Immunity

Defendants argue that YDC and the individual defendants acting in their official capacities as employees of a state agency are protected by sovereign immunity.  Generally, states are immune from suit by private parties in the federal courts. The Eleventh Amendment of the United States Constitution provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment, therefore,  bars the federal courts from entertaining suits by private parties against states, state agencies, and state officials and employees acting in their official capacities, unless the state has consented to the filing of such suit. *See e.g., Edelman v. Jordan*, 415 U.S. 651, 662, (1974); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 238 (3d

Cir. 2005); *Laskaris v. Thornburgh*, 661 F.2d 23, 25-26 (3d Cir. 1981).

The Commonwealth of Pennsylvania has not expressly waived its rights under the Eleventh Amendment. *See* 42 PA. CONS. STAT. ANN. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). The Pennsylvania Department of Public Welfare (the "DPW") is an agency that does not have an existence apart from the state and is thus entitled to Eleventh Amendment protection. *See* 71 PA. CONS. STAT. ANN. § 61 (establishing the Department of Public Welfare as an administrative department of the Commonwealth). *See also Nelson v. Pennsylvania Dept. of Public Welfare*, 244 F. Supp. 2d 382, 390 (E.D. Pa. 2002). Plaintiff agrees that the YDC is "a Pennsylvania state agency duly organized and [existing] under the statutes and ordinances of the Commonwealth of Pennsylvania and regulated, monitored and maintained by the [DPW]". Complaint ¶ 3.

Plaintiff, however, argues that because the YDC did not maintain a Board of Trustees it is a "rogue institution [operating] outside the boundaries of the institution that would otherwise provide [] immunity." Plaintiffs' Brief in Opposition p. 26. Plaintiffs have cited no authority in support of this contention, nor could the Court find any legal support for such theory. Therefore, Plaintiff's claims against the YDC and the individual Defendants acting in their official capacities are barred by the Eleventh Amendment and shall be dismissed. Plaintiff may, however, proceed with his § 1983 claims against the individual Defendants in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991)("State officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits . . . .").

B.   Eighth Amendment Violation

Eric brought suit under 42 U.S.C. § 1983, alleging that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. He contends that the Defendants were deliberately indifferent to an excessive risk to his health or

safety by knowing and disregarding the risk presented by allowing residents of the YDC to play full contact tackle football without protective equipment.

Section 1983 does not create substantive rights. It only provides a remedy for violations of rights protected by other federal laws or by the United States Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). In order to maintain a § 1983 claim, "a plaintiff must show that the defendant deprived him of a right or privilege secured by the Constitution or laws of the United States while acting under color of state law." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989). Analysis of a § 1983 claim begins by identifying the "exact contours of the underlying right said to have been violated" and then determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).

Analysis of an Eighth Amendment violation by juvenile detention facility official is the same as that for prison officials. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 (3d Cir. 2001). An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Beers-Capitol v. Whetzel*, 256 F.3d at 125 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). That state of mind, in cases regarding incarcerated individuals, is one of deliberate indifference to inmate health or safety. *Id.* The two-part test for finding an Eighth Amendment violation by a detention facility official then is: (1) a sufficiently serious constitutional deprivation; and (2) deliberate indifference by the detention facility officials or employees. *Beers-Capitol v. Whetzel*, 256 F.3d at 130.

    (1)    <u>Serious Constitutional Deprivation</u>

This first element examines whether a prisoner suffered an objectively grave "deprivation[] denying the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotations omitted). Plaintiffs argue that there is no issue regarding the existence of a sufficiently serious constitutional deprivation in the instant action.

They contend Defendants do not dispute that the serious injuries suffered by Eric as a result of Defendants' conduct supports a claim under the Eighth Amendment. In Defendants' argument in support of qualified immunity, however, they specifically state that there is no authority supporting Plaintiffs' contention that allowing the residents to play tackle football rises to the level of a constitutional deprivation. Defendants' Brief in Support p. 21. The Court, therefore, will address the issue in the context of determining an Eight Amendment deprivation.

The Eighth Amendment imposes duties on prison officials to provide prisoners humane conditions of confinement, adequate food, clothing, shelter, medical care and they must "take reasonable measures to guarantee the safety of inmates." *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). A court confronted with a prisoner's Eighth Amendment challenge to the conditions of his confinement should measure the challenged conditions against "the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The *Whitley* Court further instructed:

> After incarceration, only the "'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."[citation omitted]. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . .

*Id.* at 319 (Citations omitted).

In following the instruction of *Whitley*, the United States Court of Appeals for the Third Circuit has found that in determining whether a harm "was sufficiently serious to fall within the Eighth Amendment's zone of protections . . . [a court must inquire] whether the prisoner has been deprived of the minimal civilized measure of life's necessities." *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000); *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992). To establish

that one has been deprived of the minimal civilized measure of life's necessities requires a demonstration that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

Viewing all the relevant facts in the light most favorable to Plaintiffs, a reasonable jury could not conclude that allowing Eric to play tackle football, even without protective equipment, rises to the level of objectively extreme deprivation of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. at 298.  The residents were not compelled to play a sport, it was not a punishment, but a choice freely made by residents to occupy their free time. Clearly, the YDC residents were permitted to play football. Whether the type of football permitted was touch or tackle is actually irrelevant knowing the risks inherent in participating in the sport of football. It is a sport that involves contact, often times violent contact.  Even in touch football games, collisions can occur while blocking, defending and/or attempting to receive a pass, or while simply running around the field at high speed with total disregard for safety concerns.

This Court is unable to find that the conduct of Defendants amounts to a serious constitutional deprivation under the Eighth Amendment when many courts have found that such conduct fails to amount to negligence. See e.g. *Rutter v. Northeastern Co, School Dist.*, 437 A.2d 1198 (Pa. 1981); *Lynch v. Bd. of Ed. Collinsville Comm.*, 412 N.E. 447 (Ill. Sup. Ct. 1980); *Shabot v. East Ramapo School Dist.*, 269 A.D. 2d 587, 703 N.Y.S. 2d 268 (2000); *Mercantel v. Allen Parish School Bd.*, 400 So. 2d 1162 (La. App. 3d Cir. 1986); *Fortier v. Los Rios Community College District*, 45 Ca. App. 4th 430, 52 Cal. Rptr 2d 812 (Cal. Super. Ct. 1996). Allowing residents of a detention facility to play football, be it tackle, touch or flag, does not violate contemporary standards of decency and does not reflect "obduracy or wantonness" on the part of Defendants. Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiffs' § 1983 claim based on the Eighth Amendment.

(1)     <u>Deliberate Indifference</u>

Notwithstanding the Court's finding that Eric did not suffer a sufficiently serious constitution deprivation under the Eighth Amendment, the Court will also analyze the second requirement for liability, deliberate indifference.  The Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. at 837.  The element of deliberate indifference is subjective, not objective, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. *Beers-Capitol v. Whetzel*, 256 F.3d at 133.  The Third Circuit has expressly adopted the language in *Farmer* stating: "to defeat the summary judgment, [a plaintiff] must present enough evidence to support the inference that the defendants [are] 'knowingly and unreasonably disregarding an objectively intolerable risk of harm.'" *Beers-Capitol v. Whetzel*, 256 F.3d at 132 (quoting *Farmer v. Brennan*, 511 U.S. at 846).

Plaintiffs are unable to show that they faced a "substantial risk of harm" to which the Defendants acted with "deliberate indifference." See *Farmer v. Brennan*, 511 U.S. at 828-829. The risks of playing football are obvious and there is evidence that Defendants knew of such risks.  The predicate substantial risk of harm, however, must be objectively serious. The inherent risks in the sport of football, though obvious, are not the type of risks that are "objectively intolerable." Moreover, the evidence of record does not support Plaintiffs' argument that Defendants knowingly and unreasonably disregarded such risks. Circumstances may suggest that the Defendants had been exposed to information concerning the risk and thus "must have known" about such risks if Plaintiffs are able to present evidence showing that a substantial risk to residents playing football was "longstanding, pervasive, well-documented, or expressly noted by [detention facility] officials." See *Farmer v. Brennan*, 511 U.S. at 842-843. There is no evidence of record that there were prior serious injuries resulting from the residents' football

games at the YDC. This Court is unable to find evidence, therefore, that would permit a trier of fact to find either an objectively intolerable risk or a knowing and unreasonable disregard of the risk.

      C.    <u>Fourteenth Amendment Violation</u>

Eric has a liberty interest in his bodily integrity that is protected by the Fourteenth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 673-674 (1977); *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). The United States Court of Appeals for the Third Circuit has held that:

> [A] plaintiff must do more than show the defendant could have averted her injury and failed to do so. In order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the [consequences] and that the defendant acted with deliberate indifference to [those consequences]. In order to establish deliberate indifference on the part of the defendant, "something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm" to plaintiffs.

*Black by Black v. Indiana Area School District*, 985 F.2d 707, 712-13 (3d Cir. 1993) (quoting *Colburn v. Upper Darby*, 946 F.2d 1017, 1025 (3d Cir. 1991); *see also Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989), *cert. denied*, 493 U.S. 1044 (1990). Though this is a standard for municipal liability, the standard for personal liability for a constitutional deprivation is similar. For personal liability to exist, a plaintiff must show that: (1) defendants learned of facts or a pattern of conduct that caused, or will cause, harm to plaintiffs; (2) defendants demonstrated deliberate indifference toward the constitutional rights of plaintiffs by failing to take action that was necessary to prevent the harm; and (3) such failure caused a constitutional injury. *See Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 709-710 (E.D. Pa. 2007) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994); *D.C.G. & P.J.G v. Wilson Area Sch. Dist.*, 2009 U.S. Dist. LEXIS 26446 (E.D. Pa. Mar. 25, 2009). The Court has already determined that there is no record evidence that establishes the Defendants acted with deliberate indifference.

      Plaintiffs' also claim a Fourteenth Amendment violation based upon a "state-created

danger" theory.  In order to establish a state -created danger claim, Plaintiffs must show:

      (1)      the harm ultimately caused was foreseeable and fairly direct;

      (2)      a state actor acted with a degree of culpability that shocks the conscience;

      (3)      a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

      (4)      a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. Pa. 2006).  Plaintiffs fail to satisfy the second element requiring a degree of culpability that of shocks the conscience.

The Supreme Court in *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) cautioned that "the measure of what is conscience shocking is not a calibrated yard stick," *Lewis*, 523 U.S. at 847.  Moreover, "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another." *Id.* at 850. The question of whether a given action shocks the conscience is difficult to quantify. At one end of the spectrum of culpable conduct, negligent behavior can never rise to the level of conscience shocking. *See Lewis*, 523 U.S. at 849. ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). At the other end of the spectrum, actions "intended to injure in some way unjustifiable by any government interest" are those "most likely to rise to the conscience-shocking level." *Id.*  Acts that fall between the extremes of mere negligence and harmful intent require courts to make "closer calls," based on a context-specific inquiry. *Id*

The degree of wrongfulness necessary to reach the "conscience-shocking" level, therefore, depends upon the circumstances of a particular case. *Miller v. City of Philadelphia*,

174 F.3d 368, 375 (3d Cir. 1999). For guidance, the Third Circuit has ruled that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). It depends in particular on "the extent to which a state actor is required to act under pressure." *Sanford v. Stiles*, 456 F.3d 298, 301 (3d Cir. 2006). A sliding scale is used "upon which the degree of culpability required to establish such a claim must be measured." *Phillips v. County of Allegheny*, 515 F.3d 224, 240 (3d Cir. 2008). Where a defendant is "confronted with a hyperpressurized environment such as a high-speed chase . . . it is usually necessary to show that the officer deliberately harmed the victim." *Estate of Smith v. Marasco (Smith II)*, 430 F.3d 140, 153 (3d Cir. 2005) (quotations and citations omitted). Where a defendant has "the luxury of proceeding in a deliberate fashion . . . deliberate indifference may be sufficient to shock the conscience." *Id*. Further, where a defendant has to act with some urgency, but does not have to make split-second decisions the defendant's actions must "reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 426 (3d Cir. Pa. 2006)(quoting *Miller v. City of Philadelphia*, 174 F.3d at 375-376).

   In *Lewis*, the Court identified deliberate indifference as the appropriate standard for holding prison officials liable for their role in creating unsafe conditions of confinement. The Court noted this standard "rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis*, 523 U.S. at 853. Because the deliberate indifference standard governs in the instant action, and because the Court has determined there is no record evidence that establishes the Defendants acted with deliberate indifference, Plaintiffs' § 1983 claim based on the Fourteenth Amendment also fails.

   D. <u>Fourth Amendment Violation</u>

   In their complaint, Plaintiffs also invoke the Fourth Amendment as a basis for the instant lawsuit. The Fourth Amendment protects "the right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Supreme Court has held that the Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officials. *Elkins v. United States*, 364 U.S. 206, 213 (1960). "The Fourth Amendment's' principal concern . . . is with intrusions on privacy,' and therefore when the infraction deals not 'with the initial decision to detain an accused and the curtailment of liberty that such a decision necessarily entails, but rather with the conditions of ongoing custody following such curtailment of liberty,' then the claim invokes principles of [Fourteenth Amendment] substantive due process." *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). The Court is unable to find any evidence of intrusions on Eric's privacy rights in this instance. Moreover, the Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches and seizures, is fundamentally inconsistent with incarceration. *Hudson v. Palmer*, 468 U.S. 517, 527-528 (1984). Accordingly, the Fourth Amendment claim shall be dismissed..

  E. Fifth Amendment Violation

  To the extent that Plaintiff seeks to invoke the Fifth Amendment's due process clause, such claim fails as a matter of law because the Fifth Amendment's due process clause applies against Federal government actors whereas all of the defendants in the complaint are state government actors and so, are covered by the Fourteenth Amendment's due process clause which we have already analyzed above. *See Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997)("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials."). Accordingly, Plaintiffs' § 1983 claim based on the Fifth Amendment shall be dismissed.

V. **CONCLUSION**

  Based on the foregoing, the Court will grant the motion for summary judgment in favor of

- 13 -

Defendants[2] on Plaintiffs' § 1983 claims based on the Fourth, Fifth Eighth and Fourteenth Amendments.  An appropriate order will follow.

                                                                 s/ David Stewart Cercone
                                                                 David Stewart Cercone
                                                                 United States District Judge

cc:     Robert Ross, Esquire
        Ross Feller Casey
        1650 Market Street
        One Liberty Avenue
        Suite 3450
        Philadelphia, PA 19103

        Mary Lynch Friedline, Esquire
        Mariah L. Passarelli, Esquire
        Office of Attorney General
        6th Floor, Manor Complex
        564 Forbes Avenue
        Pittsburgh, PA 15219

---

[2] Because the Court determined that Plaintiffs failed to show a constitutional violation, there was no need for the Court to address the qualified immunity issue.